**SO ORDERED.**

**SIGNED this 12 day of September, 2007.**

_____
**A. Thomas Small**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| **SADDAM ALAHWAS** | 06-01802-5-ATS |
| DEBTOR | |
| | |
| **NORTH CAROLINA EDUCATION LOTTERY** | |
| Plaintiff | **ADVERSARY PROCEEDING NO.** |
| v. | S-07-00021-5-AP |
| **SADDAM ALAHWAS** | |
| Defendant. | |

### MEMORANDUM OPINION

The trial of this adversary proceeding brought by the North Carolina Education Lottery ("NCEL") pursuant to 11 U.S.C. § 523(a)(4) to determine the dischargeability of a debt owed by the debtor/defendant, Saddam Alahwas, was held on September 11, 2007, in Raleigh, North Carolina. For the reasons that follow, judgment will be entered in favor of the plaintiff.

Saddam Alahwas filed a petition for relief under chapter 7 of the Bankruptcy Code on October 16, 2006. Mr. Alahwas formerly operated two convenience stores, J.C. Corner One and J.C. Corner Two. Mr. Alahwas was a North Carolina Education Lottery retailer in the J.C. Corner Two store. According to the plaintiff, Mr. Alahwas was obligated by contract and by the North Carolina State Lottery Act and the rules promulgated thereunder to maintain a trust account for proceeds from the sales of lottery tickets, and that Mr. Alahwas was a fiduciary to the NCEL with respect to those proceeds. The plaintiff maintains that Mr. Alahwas failed to remit certain funds to the NCEL, and that his obligation to pay those funds is nondischargeable pursuant to § 523(a)(4).

This bankruptcy court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(I), which this court may hear and determine.

Section 523(a)(4) excepts from discharge a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." The plaintiff established at trial that pursuant to the North Carolina State Lottery Act, North Carolina General Statute § 18C-140, the Lottery Commission promulgated rules related to how retailers account for tickets or shares in their custody, account for money collected from the sales of tickets, and remit funds to the Lottery Commission. The Commission Rules provide that retailers must maintain separate bank accounts for lottery proceeds that enable the NCEL to collect lottery proceeds via electronic funds transfer. The retailer is required to make deposits of all lottery proceeds on a daily basis, and the NCEL is to collect those funds via electronic funds transfer weekly.

Michael Suggs, the collection manager for the NCEL, testified about the procedures by which tickets are allocated to retailers and accounts are maintained. Each packet of tickets includes a bar code, and the NCEL maintains tracking software that shows the status of each packet. The packets begin in a warehouse, then are issued to a particular retailer, receipt by the retailer is confirmed, and then the retailer activates a packet by scanning the bar code in the terminal at the retail location. Each packet is coded to a particular retailer and a particular location, so that any given packet may only be activated at one retail location, with the use of a password. Because the terminal is connected to the NCEL via satellite, the terminal must be at the specified retail location for the packet to be activated. All of the tickets in question were activated at Mr. Alahwas' store, J.C. Corner Two.

Mr. Suggs further testified that once the tickets are "activated," they are put in the ticket dispenser for sale. The activation of a ticket does not equate to the sale of a ticket, but a ticket may not be sold until it is activated. After activation, the account may be "settled" in one of three ways: an automatic settlement occurs 21 days after the pack of tickets is activated; the retailer may settle on its own; or the NCEL can settle if the tickets are stolen, the retailer goes out of business, or if a retailer wants credit for unsold tickets. When an account is "settled," the NCEL issues an invoice for an activated pack of tickets. The NCEL issues its invoices on Saturdays advising of the amount to be drafted from the trust account, and drafts occur on the following Tuesday.

The NCEL presented evidence of ticket packs that were settled in the week ending June 10, 2006, with a value of $2,790, ticket packs that were settled in the week ending June 17, 2006, with a value of $1,574, and ticket packs that were settled in the week ending June 24, 2006, with a value of $1,395. Pl. Exs. B, C, D. The issued invoices subtracted partial returns, and the total due for those three weeks was

$5,053.65. Pl. Exs. E, F, G. The NCEL attempted to sweep the trust account on the Tuesdays following each invoice, and each was returned for insufficient funds. The NCEL was able to recover a payment of $435.65 from Mr. Alahwas' business partner. As a result, the NCEL seeks a determination that the amount of $4,618 is nondischargeable due to Mr. Alahwas' defalcation while acting as a fiduciary.

      Mr. Alahwas did not appear at the trial, but his answer contended that the J.C. Corner Two store was closed by the sheriff's office on May 31, 2006, and that the sheriff took possession of the lottery machines and tickets. Presumably, Mr. Alahwas' defense is that he did not activate or sell any tickets in the time frame that would have appeared on the invoices in question. Investigator William Jewell of the Pamlico County Sherriff's Office testified that an order of attachment was issued by the Pamlico County Clerk of Court at 1:45 p.m. on June 2, 2006, and that Investigator Jewell served the order on the J.C. Corner One store at 3:10 p.m. that same day. Another officer secured the premises at J.C. Corner Two at approximately the same time, and Investigator Jewell took possession of the contents of the J.C. Corner Two store later that afternoon. The lottery tickets at the store were turned over to the Alcohol Law Enforcement ("ALE") on the afternoon of June 2, 2006, and the terminals were removed the next day by the company that installed them.[1] Mr. Suggs' evidence showed that tickets were activated as late as 2:26 p.m. on June 2, 2006. Mr. Alahwas has been given credit for all of the tickets that were turned over to the ALE.

---

[1] The civil action in which the order of attachment was issued was settled about 45 days after the order was served. The contents of the stores were turned over to the plaintiff in that action, and the cash on hand was returned to Mr. Alahwas.

Based on the foregoing, the court finds that Mr. Alahwas owed a fiduciary duty to the NCEL to maintain a trust account and to turn over proceeds from the sale of lottery tickets, that he failed to make the deposits of certain sales, and that by failing to turn over those proceeds he breached that fiduciary duty. The court further finds that Mr. Alahwas was still in possession of the lottery tickets and terminals as late as 3:00 p.m. on June 2, 2006, and that he is responsible for the invoices issued related to tickets activated prior to that time. Accordingly, the court concludes that the debt owed to the NCEL in the amount of $4,618 is nondischargeable pursuant to 11 U.S.C. § 523(a)(4).

A separate judgment will be entered accordingly.

**END OF DOCUMENT**